' [No. 10,098.]

# THE PEOPLE v. E. P. WELCH.

CHALLENGE TO PANEL OF JURORS.—When the panel is formed from persons whose names are not drawn as jurors, a challenge to the venire is in effect a challenge to the panel, and in such case there is but one ground for challenge, which is, that the officer who summoned the jurors was biased.

SERVING SPECIAL VENIRE.—When the panel of drawn jurors is exhausted, and the Court is about to issue a special venire, it should not, of its own motion, and against the objections of the defentant, examine the sheriff as to his bias, and, if it finds him biased, direct the coroner to serve the venire.

OBJECTION TO PANEL OF JURORS.—If, when the drawn panel is exhausted, the Court improperly directs the coroner to serve a special venire, the defendant cannot take advantage of the error by a challenge to the panel, on the ground that the coroner is not qualified to serve the venire.

QUALIFICATION OF JUROR.—One who had formed an opinion as to the guilt or innocence of the defendant founded on what he had heard, or read in the papers, and which he believed to be true, was not disqualified (under section 1,073 of the Penal Code as in force when this occurred), from being a juror, provided he has no feeling of malice or ill-will toward the defendant.

CHARGE TO JURY ON QUESTION OF FACT.—The clause in the Constitution prohibiting judges from charging jurors with respect to matters of fact, does not prohibit judges from determining and charging a jury whether there is any evidence with regard to an issue or tending to sustain a fact on which a judgment may depend.

CHARGE TO JURY IN TRIAL FOR MURDER.—If, on a trial for murder, there is no evidence tending to prove that the crime was manslaughter, or that the killing was excusable or justifiable, it is not·error for the Court to charge that "if the killing was wilfull (that is intentional) deliberate and premediated, it is murder in the first degree; otherwise it is murder in the second degree."

IDEM.—Because such instruction seems to assume a killing, the question whether the deceased was killed by the defendant is not taken away from the jury.

IDEM.—It cannot be assumed as a question of law that a jury understands an instruction given by the Court in a sense different from that in which it is commonly understood by those outside the jury-box.

CHARGE TO JURY.—A charge to a jury must be taken together, and it is not necessary to insert in each separate instruction all the exceptions, limitations and conditions which are inserted in the charge, taken as a whole.

VERDICT ON TRIAL FOR MURDER.—If a jury agree that the defendant is guilty of murder in the first degree, but cannot agree that the punishment shall be imprisonment for life, or do not declare in their verdict

that such shall be the punishment, it is the duty of the Court to pronounce punishment of death.

IDEM.—The jury, on a trial for murder, if they find the defendant guilty of murder in the first degree, need not declare in their verdict that the punishment shall be death, for if the verdict is silent in respect to the penalty, the Court must sentence the defendant to death.

APPEAL from the District Court, Sixteenth Judicial District, County of Inyo.

The defendant was tried for the crime of murder in the first degree at the term of the District Court, held in Inyo county, for May, 1874. Several of the jurors were challenged by the defendant on the ground that the juror had formed an unqualified opinion as to the guilt or innocence of the defendant. The jurors challenged, when interrogated severally, answered as follows:

James McCharty, said: "Have formed an opinion as to the guilt or innocence of the defendant—a qualified opinion; never heard anything but what I read in the paper; never heard the paper account contradicted; I believe the paper report."

J. P. Ritgers, said: "Have expressed no opinion; have formed an opinion; read the paper accounts; have not heard the report contradicted; believed it then and believe it now; have formed no unqualified opinion."

W. L. Hunter, said: "Have heard of the matter from parties who are familiar with it; have formed an opinion as to the guilt or innocence of defendant_ _decided if not unqualified opinion; I have that opinion still."

In answer to the District Attorney, he said: "Had heard of the matter shortly after the occurrence, and read the paper account and formed an opinion; my opinion was based upon the hypothesis that what I heard was true, and would act in business affairs upon such an opinion to a certain extent. I suppose my opinion is qualified, but would require evidence to remove that opinion. My opinion was formed from hearsay evidence, yet I believed what I heard."

The Court denied the challenges. The Court sentenced the defendant to suffer death, and he appealed from the judgment and from an order denying a new trial.

The other facts are stated in the opinion.

*J. G. Howard*, for the Appellant.

The challenge to the panel "must be made in the same form, and determined in the same way, as if made to a juror. And may be taken by either party." (Penal Code, Sec. 1058.)

Clearly not by the Judge, who, in this instance, not only exercised the right of challenge, but assumed the function of catechist.

Again, the bias of an officer is a personal objection belonging to parties litigant—State or defendant—that may be waived. The Sheriff may have been biased in favor of the defendant. In such case, the defendant would not challenge a jury panel summoned by a friendly officer.

The Court ruled badly in regard to certain challenged jurors. (*People* v. *Reynolds*, 16 Cal. 128.)

Welch was tried at the May Term of the District Court, in and for the County of Inyo; at which time was in force the amended section 190 of the Penal Code, which is in this language:

"Every person guilty of murder in the first degree, shall suffer death, or confinement in the State Prison for life, at the discretion of the jury trying the same.

Says Bishop (Crim. Pro. Vo. 1, Sec. 838): "In those States and those particular cases, in which the law submits the amount of punishment to be inflicted upon the defendant, to the determination of the jury, the verdict, when it is one of guilty, must specify the punishment, else it will be defective and insufficient."

*John L. Love*, Attorney-General, for the People.

By the Court, McKinstry, J.:

In the Court below the following proceedings took place: "The panel being exhausted with the exception of two tickets, which the clerk stated were in the box, the District Judge proceeded to interrogate the Sheriff as to his forming or expressing an unqualified opinion as to the guilt or innocence of the defendant. He answered affirmatively. The said

Sheriff of the County of Inyo aforesaid, being examined—under oath generally as to his qualifications under section 1064 of the Penal Code to act in summoning an 'ordered venire' of fifty additional jurors—he answered that he had formed an unqualified opinion as to the guilt or innocence of the prisoner, and that he was biased, as he was present during the preliminary examination of the prisoner before the Magistrate. The Coroner, A. Wayland, was then sworn on the same point, who stated that he had not formed or expressed an opinion on the subject. Defendant's counsel objected to such examination of Sheriff and Coroner, on the ground that the time for such examination arose only when objection was made by the defense to the panel. The Court now orders, under objection of defendant, that a special venire issue to the Coroner, the said A. Wayland, for fifty additional jurors, 'the venire is directed to the Coroner of the County for the reason that the Sheriff of said County has, upon examination under oath, shown himself to be disqualified from serving an 'ordered venire, under section 1064 Penal Code.' Upon the return of such venire, defendant objected to the same, on the ground that the Coroner was unqualified to serve said venire. Objection overruled, defendant excepting."

The District Judge erred, if he supposed that his action was authorized by section 1064 of the Penal Code.

That section only allows a challenge of the panel on account of such bias in the officer (person) serving the venire, as is mentioned in section 1073.

Nor was the action of the Judge regular under section 4191 or section 4192 of the Political Code. The former empowers the Coroner to serve process only where the Sheriff is a party, and the latter permits the appointment of an elisor, when the Coroner is disqualified or biased.

But, however irregular the appointment of the Coroner to serve the venire, the defendant could not object to the panel that the jurymen were summoned by one whom the Court had recognized as its officer. The objection to the venire was in legal effect a challenge to the panel, and the statute gives but one ground for such challenge (when the

jurors are not drawn), which is that the particular officer who summoned the jurors was biased. (Penal Code, Sec. 1,064.)

In *People* v. *Southwell* (46 Cal. 141), it was held that the irregularity in the action of the County Judge, in improperly appointing the Coroner to summon the Grand Jurors, could not be taken advantage of by challenge to the panel of Grand Jurors, because such irregularity was not one of the grounds of challenge provided by the Penal Code.

That case is authority for the proposition that the mistake of the Judge in this case was not ground of challenge to the panel of trial-jurors, or of objection to the venire.

No objection was made to the panel on the ground that the Coroner was not impartial.

Certain of the jurymen were challenged by the defendant for implied bias, on the "ground that the juror had formed an unqualified opinion as to the guilt or innocence of the defendant." The challenges were denied by the Court and the defendant excepted.

A challenge for implied bias can be taken only for the causes specified in section 1,074 of the Penal Code, as amended. (*People* v. *Cotta, ante* 166.)

In this case, the verdict was: " We, the jurors, do find the defendant Welch guilty of murder in the first degree, as charged in the indictment."

Section 190 of the Penal Code, as amended by the Act of March 28, 1874, reads: "Every person guilty of murder in the first degree shall suffer death, or confinement in the State Prison for life, at the discretion of the jury trying the same; or, upon a plea of guilty, the Court shall determine the same; and every person guilty of murder in the second degree is punishable by imprisonment in the State prison not less than ten years."

It is obvious that the duty imposed upon the Court by the section quoted is to exercise the same discretion, in respect to punishment, when a defendant pleads guilty and the Court finds the crime to be murder in the first degree (Penal Code, Sec. 1,192), as is to be exercised by the jury when they find a defendant guilty, and find also that the

offense is murder of the first degree. (Penal Code, Sec. 1,157.)

The nature of that discretion is to be ascertained by reference to the language of the statute. In Virginia it was held, that in an action *qui tam* the verdict should fix the amount of damages. (Scott's case, 5 Grat. 6,797.) Also, that where the duty was imposed on the jury of fixing the term of imprisonment, and the verdict did not ascertain such term, it should be set aside. (Mills' case, 7 Leigh, 751.)

But the Act amending Section 190 of the Penal Code does not give the general discretion which juries exercised under the Virginia statute. Here their discretion is limited, at most, to determining which of two punishments shall be inflicted; and we think that it is still more restricted, and is to be employed only where the jury is satisfied that the lighter penalty should be imposed. It would seem that, in view of the apparently growing disinclination to find verdicts of murder in the first degree, when the necessary result was capital punishment, and the existence of a feeling that there were nicer distinctions in the degree of malignancy exhibited in murders than were made by the letter of the statute definitions, the Legislature intended to give to the jury, when the verdict was murder of the first degree, the power of relieving the defendant of the extreme penalty, and of substituting another punishment in its stead. A verdict fixing the punishment at imprisonment for life is somewhat analogous to the French verdict, "Guilty with extenuating circumstances," and is the equivalent of the Louisiana verdict, "Guilty without capital punishment," held good in *State* v. *Rohfrischt* (12 La. An. 382); and authorized by the statute which provides, "In all cases where the punishment denounced by law is death, it shall be lawful for the jury to qualify their verdict by adding thereto, ' without capital punishment.' And whenever the jury shall return a verdict qualified as aforesaid, the person convicted shall be sentenced to hard labor for life in the State Penitentiary." (Rev. State of La. p. 163.)

This view of the question is not unsustained by authority

in California. By the Act of April 22, 1851, it was en-
acted: "Every person who shall feloniously steal, etc.,
shall be deemed guilty of grand larceny, and upon convic-
tion thereof, shall be punished by imprisonment in the
State prison for any term, not less than one year nor more
than ten years, or by death, in the discretion of the jury."
And in *The People* v. *Littlefield* (5 Cal. 355), this Court said:
"It would seem, from the language of the Act, that it was
the intention of the Legislature that the jury should only
assess the punishment when, in the exercise of their discre-
tion, they thought that the defendant deserved the punish-
ment of death. If they did not agree to such punishment,
upon finding the defendant guilty, then they should find a
general verdict." In that case, it was evidently considered
that the object of the Legislature (actuated by the circum-
stance that certain kinds of property—as live stock—were
peculiarly exposed, in portions of this State, or by some
other motive equally just) was to confer upon the juries the
power of affixing, at their discretion, a more severe penalty
than had previously been imposed on those guilty of grand
larceny. By parity of reasoning we may say, in view of the
former punishment for the crime of murder of the first
degree, and the history of legislation on the subject in this
State and elsewhere, that it was the purpose of the Legis-
lature (by the amendment of section 190) to permit the
jury, in a case where the facts proved brought the crime
of the defendant within the statutory definition of the
higher offense, but they believed the punishment of death
too severe, to declare that he should be imprisoned for life.
We think, therefore, the statute should be construed as if
it read: "Shall suffer death, or (in the discretion of the
jury) imprisonment in the State prison for life."

The defendant excepted to the seventh instruction, which
—commencing with the words, "In this case, if the killing
was willful (that is, intentional), deliberate and premedi-
tated, it is murder in the first degree; otherwise it is mur-
der in the second degree"—proceeds to explain that the
condition of the defendant, as to drunkenness, was to be
considered by the jury in determining whether he was capa-

ble of forming the specific intention to take away life which is a necessary element in murder of the first degree.

It is urged that the instruction was a violation of the Constitution, the seventeenth section of Article VI, which reads: "Judges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law."

The provision of the Constitution is equally applicable to civil and criminal proceedings, and in both it may become the duty of the Judge to determine whether there is any evidence to sustain the main issue, or to sustain any fact on which a particular judgment must necessarily depend. Of course, such determination should be the result of prudent and cautious examination; but in a proper case, the Court may act on the assumption that there is no evidence in respect to a particular issue, and grant a non-suit, or advise an acquittal, or frame its charge to the jury, without reference to the existence of facts as to which no evidence has been produced. In such case, the Court cannot "state the testimony," for there is none to state. The "matters of fact," as to which the Court is not permitted to charge the jury, are the facts contested, or, in some degree, sought to be established by evidence. In assuming the non-existence of evidence excluded or not offered, the Court does not interfere with the discretion of the jury, whose verdict cannot stand, if based on matters of fact, in respect to which there is no evidence.

The prohibition of the Constitution cannot be made a means of shielding the District Judges in their refusal or neglect to discharge the duty of giving such instructions, and such instructions only as are appropriate to the evidence in the particular case, and thereby aiding the jury in the proper discharge of their function. It has been repeatedly held by this Court that the District Court may properly refuse a charge defining manslaughter when there is no evidence tending to establish that offense; and that under such circumstances it is no violation of the Constitution for the trial Court to assume that the offense is not manslaughter. In the present case there is no evidence

whatever tending to prove either that the crime was man-slaughter, or that the killing was justifiable or excusable. If the defendant was sane, therefore, it was not error to direct the attention of the jury to the real issue, as presented by the evidence: Was the killing murder of the first or second degree ?

In *People* v. *Doyell* (48 Cal. 85), the Court said: "We must take the charge together, and if, without straining any portion of the language, it harmonizes as a whole, and fairly and correctly presents the law bearing on the issues tried, we will not disturb the judgment because a separate instruction does not contain all the conditions and limitations which are to be gathered from the entire text. It is true that an error which might affect the defendant will be presumed to have injured him; but another presumption is that jurors are men of common intelligence, and capable of comprehending the ordinary use of language, as applied to the particular proposition under consideration, and in reference to which it is employed. We will not assume that the jurymen may not have understood the charge as we understand it."

Applying these presumptions to the seventh instruction, it cannot successfully be contended—and, indeed, is not contended—that because the charge seems to assume a killing "in this case," the question whether the deceased was killed by the defendant was taken away from the jury.

Nor do we think the jury understood the seventh instruction to exclude from their deliberations the question of the defendant's sanity.

The law on the subject of insanity was fully and fairly given in the instructions bearing on that subject requested by the defendant.

The seventh instruction was addressed to the question of the effect of drunkenness as applied to the distinction between murder of the first and second degree, and clearly explained that question. It cannot be assumed that the jury understood the instruction in any sense different from that in which it would be commonly understood by those out of the jury-box. It was not necessary to insert in the

instruction all the exceptions, limitations and conditions which are clearly ascertainable from the charge as a whole. The proviso: ''If the defendant was sane," is naturally implied, and the instruction is to be read as if those words were actually inserted.

Judgment and order appealed from, affirmed, and the Court below is directed to issue a warrant for the execution of the judgment.

Mr. Justice RHODES did not express an opinion.

By the Court, McKINSTRY J., on petition for rehearing:

The petition for rehearing calls our attention to the fact that the Act amending sections ten hundred and seventy-four and ten hundred and seventy-eight of the Penal Code, took effect on the 1st day of July, 1874, and subsequently to the trial of the present action in the District Court.

At that trial the defendant was entitled to his exceptions to the ruling of the District Court denying his challenges to jurymen, on the ground that they had formed or expressed an unqualified opinion as to the guilt of the defendant.

Section 1,073 of the Penal Code, as in force when this case was tried in the Court below, provided: "A hypothical opinion, founded on hearsay or information supposed to be true, unaccompanied with malice or ill-will, does not disqualify a juror, and is not a cause of challenge for either actual or implied bias."

The Court below found, in effect, that the jurymen challenged were without "malice or ill-will," and there is no evidence in the record tending to show that either of them entertained any feeling of hostility toward the defendant. The Court below further found, in effect, that the opinion of the juror was hypothetical. We do not think it was error so to find.

The provision of the statute above quoted was adopted as an amendment to the three hundred and forty-sixth section of the Criminal Practice Act by the Legislature of 1868, and was inserted in the Penal Code as a portion of Section 1,073.

Unless the word "supposed" be considered as the equivalent of "believed" (and it may properly be employed in that sense), the law was not changed by the amendment of 1868.

Prior to the amendment an opinion—if such could be called an opinion—qualified by the condition "if the information I have received is true," did not render a juror incompetent. It had been held that it was a good cause for challenge that a juror had expressed an unqualified opinion upon what he had heard. (*People* v. *Cottle,* 6 Cal. 227.)

Without reference to the statute, a juror is not disqualified by reason of an impression produced upon his mind by statements in a newspaper, or made orally, which he does not believe. The amendment therefore does not require of the Court to satisfy itself that the juror has excluded all belief in the statement he may have received, and consciously attached a condition to his opinion.

The statute does not merely declare that a hypothetical opinion shall not disqualify a juror, but defines the species of opinion which is hypothetical and which shall not disqualify him. Within the meaning of the Penal Code a hypothetical opinion is one "founded on information supposed" (believed) "to be true."

To render the provision of the statute effectual as changing the law existing when the amendment was adopted, we must hold that the provision was a legislative declaration that the man who had formed an opinion founded on hearsay information supposed to be true, but who was devoid of any feeling of ill-will toward a defendant, was not in the nature of things—and aside from the traditions of the courts—an improper person to try one charged with crime. Such an opinion is hypothetical, because, in a legal sense, every opinion must be hypothetical which is not based on all the evidence produced at a trial. By convention, and from the very nature of government, an opinion honestly formed by the juror at the trial, and on the evidence produced at the trial, must be regarded as absolutely correct; but any opinion based upon information otherwise conveyed at second hand to the citizen can only be supposed to be correct.

But the citizen does not become disqualified to act as a juror because he may not be conscious, at the time his opinion is formed, that it is founded merely on a suppositive state of facts.

We see no reason to change our views expressed in the former opinion with respect to the other questions therein considered.

It results from the construction we have given to Section 190 of the Penal Code (as amended) that a jury may—in the exercise of its discretion—declare that a defendant guilty of murder of the first degree shall be punished by confinement in the State Prison for life. If a jury shall agree that a defendant is guilty of murder of the first degree, but cannot agree that the punishment shall be imprisonment for life, or shall not declare that the punishment shall be such imprisonment, it will be the duty of the Court to pronounce judgment of death. The jury need not declare that death shall be inflicted—in cases where they cannot agree on imprisonment—since, if the verdict is silent in respect to the penalty, the Court must sentence the defendant to death.

Rehearing denied.

Mr. Justice RHODES did not express an opinion.