## THE TERRITORY OF HAWAII *v.* W. H. MARSHALL.

### EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED JULY 13, 1900.          DECIDED OCTOBER 9, 1900.

FREAR, C.J., GALBRAITH, J., AND J. A. MAGOON, ESQUIRE, OF THE BAR, IN PLACE OF PERRY, J., ABSENT.

Sections 304-306 of the Penal Laws are not void for defectiveness or unconstitutional because they divide the offense of making, as also that of publishing a libel, into two degrees without distinguishing between them except by the amount of the penalty and leave it to the court or jury authorized to decide on the facts to determine the degree.

Verdicts by nine or more of the twelve jurors were lawfully received after the annexation of these islands to the United States but before the establishment of a Territorial government by Act of Congress.

Where the record shows a plea of not guilty in the District Court, it is not necessary that the defendant should plead again on his appeal in the Circuit Court, or that he should plead to a charge as amended in matter of form where he has pleaded to the original charge.

OPINION OF THE COURT BY FREAR, C.J.

(Galbraith, J., dissenting.)

On September 20, 1899, the defendant was convicted and sentenced by the District Magistrate of Honolulu on a charge of making and publishing a libel in the first degree concerning the late Chief Justice Judd. He appealed to the Circuit Court and pending his appeal was admitted to bail but subsequently his surety surrendered him and he sued out a writ of *habeas corpus* in the Supreme Court of the Republic of Hawaii, claiming that the statute relating to libel was void for uncertainty and defectiveness and unconstitutional. The Court held the statute valid and remanded the defendant to custody (*In re Marshall,* 12 Haw. 366) and he was again enlarged on bail. Afterwards he was tried on his appeal in the Circuit Court on a charge amended so as to cover the publishing but not the making of a libel and was found guilty by a verdict rendered by nine of the twelve jurors. He now comes here on exceptions. The points relied on will be considered in their order.

The defendant renews his contention made but not sustained in the *habeas corpus* proceedings, that the statute which divides the offense of making, as also that of publishing a libel, into two degrees is defective in that it does not define the degrees, and unconstitutional as an attempt on the part of the legislature to delegate to the court or jury the power to determine the degrees. In those proceedings the court held that the statute in creating two degrees did not create two offenses, but that it created only one offense, and then divided it into degrees with respect to the penalty only, and that that was a constitutional exercise of legislative power.

The statute (Pen. L., Ch. 32) after defining a libel (Sec. 299), the making of a libel (Sec. 300) and the publishing of a libel (Sec. 301) provides as follows:

"Sec. 304. The offense of making, as also that of publishing a libel, is of two degrees, and the degree is to be found by the jury, or determined by the Court or Magistrate authorized to decide on the facts; and so also the degree is to be determined

by the Court before which proceedings are had, where the facts charged are admitted by plea or otherwise.

"Sec. 305. Whoever is guilty of the offense of making or publishing a libel in the first degree, shall be punished by imprisonment at hard labor not more than one year, or by fine not exceeding one thousand dollars, in the discretion of the Court.

"Sec. 306. Whoever is guilty of the offense of making or publishing a libel in the second degree, shall be punished by imprisonment at hard labor not more than three months, or by fine not exceeding three hundred dollars, in the discretion of the Court."

Under the statute there is an offense of making a libel and an offense of publishing a libel. Each of these is carefully defined. But it is contended that the legislature, without itself fully defining any offense, attempted to create two offenses (degrees) of making a libel and two of publishing a libel, and to leave it to the court or jury to complete the definitions, and that it is not competent for the legislative branch of the government to delegate authority to the judicial branch to determine what shall constitute an offense; that it is the right of the accused to be informed clearly what he is to meet, and that under this statute it is impossible to so inform him, because the same facts might constitute either of the degrees of making a libel or either of the degrees of publishing a libel; that it would be impossible for the trial judge to instruct the jury as to the elements that constitute the respective degrees, or for him or the appellate court to say whether a verdict of guilty in one degree or the other is contrary to the law or the evidence, since there is nothing in the statute to distinguish between the elements which constitute the respective degrees.

Undoubtedly the legislature cannot delegate to the court or jury, power to define criminal offenses. On the other hand it may constitutionally confer upon the jury as well as upon the court discretionary power to determine within prescribed limits the nature and amount of the penalty. Thus, the jury may be permitted to decide whether the penalty in a case of murder shall be death or imprisonment for life (*State v. Hockett*, 70 Ia. 442; *Rice v. State*, 7 Ind. 332; *People v. Welch*, 49 Cal. 174), or

whether in a case of grand larceny it shall be death or imprisonment for not less than one nor more than ten years (*People v. Littlefield*, 5 Cal. 355; see 49 Cal. 180), or the jury may assess the precise amount of the fine or imprisonment or both within the prescribed limits (*Cook v. Greene*, 1 Gr. (Ia.) 56; *State v. McQuaig*, 22 Mo. 319). Our statute relating to libel prescribes a limit in each case, namely, imprisonment for not more than three months or fine not exceeding three hundred dollars in one case, and imprisonment for not more than one year, or fine not exceeding one thousand dollars in the other case.

The question therefore is one of construction. The law as to constitutionality is well settled. The legislature cannot leave it to the jury to define the offenses; it may leave it to them to determine either the precise penalty or the general limits within which the precise penalty must be fixed by the court. The question is, to which class does this statute belong? The word degree is of doubtful meaning. It means a grade. But it may mean a grade distinguished from other grades by the presence or absence of one or more particular elements, in which case it means a separate crime or offense, or it may mean a grade in mere intensity or aggravation, without requiring the presence or absence of any particular element to distinguish it from other grades. In the one case the legislature specifies the distinguishing element or elements, and in so doing practically really defines so many different offenses or crimes; in the other case it defines one crime and may leave it to the court or jury to say within certain limits what the penalty shall be, according to the aggravation of the case. It is immaterial in what words it may undertake to do this, so long as it does it. The substance, not the form, is the important thing. If the legislature defines an offense and then leaves it to the jury to say whether the penalty shall be more or less, it is immaterial whether it speaks of the offense as being in one degree or the other according as the jury find, or whether it provides that the jury may so find by expressly naming the amount of the penalty or by saying in general terms that it shall be the larger or the smaller penalty or by saying that the case is a more or less aggravated one or one deserving the larger or

smaller penalty or one of a higher or lower degree. In some cases the legislature may easily name distinguishing elements and so define different offenses; in other cases, as in the case of libel, it can not do so except in a very limited or incomplete or unsatisfactory way. In the latter class of cases it may feel that the only reasonably practical way is to either leave it to the jury to assess the penalty within prescribed limits or to indicate in some appropriate way whether the case is more or less aggravated and so guide or limit the court to some extent as to the precise amount of the penalty. It would be perfectly competent in the case of libel to permit the jury to say in so many words whether the penalty should be imprisonment for not more than three months or fine not exceeding three hundred dollars, or imprisonment for not more than one year or fine not exceeding one thousand dollars. It would also be perfectly competent for the legislature to permit the jury to do this in substance by permitting it in form to find that the offense was more or less aggravated or that it was of a higher or lower or first or second degree. The only question is whether that is what was intended. It is a well established rule that statutes should be construed, if possible, so as to be constitutional and operative and so as to carry out the intention of the law-making body. In this case it is possible to construe the statute so as to make it effective and constitutional, namely, by construing it as an attempt to give to the jury the power, to a certain extent, of determining the amount of the penalty and making the punishment fit the crime according as the latter is deserving of greater or less punishment in the opinion of the jury. The statute contemplates "the offense of making, as also that of publishing a libel," that is, one offense of making, as also one offense of publishing a libel, and then provides that each of these shall be of two degrees. It distinguishes between the offenses by a difference in the elements which constitute them; it distinguishes between the degrees only by the difference in the punishment. There are no elements required to constitute the offense in one degree that are not also required to constitute the offense in the other. The difference is, as the statute in-

dicates, merely in degree, not in kind of crime or in the presence or absence of any particular element.

It is true that the accused has a right to be informed clearly what he is to meet, but in our opinion it is not true, as contended, that under this statute it is impossible to so inform him because the same facts might be found to constitute either of the degrees of making a libel or either of the degrees of publishing a libel. The same facts not only might, but do, constitute each of the two degrees of either offense. The statute so clearly indicates. If so, the defendant must necessarily know what he is to meet, if the offense, without respect to the degrees, is fully described as it must be under general rules. There is not a single element left to the court or jury to define, but in this, as in every case where the precise penalty is not prescribed by the legislature, the defendant must know that after every element of the offense is established by the prosecution so as to justify a conviction, there is still left a large field of inquiry as to the aggravation of the offense in the particular case, upon which the precise amount of penalty will largely depend.

It is contended that it would be impossible for the trial judge to instruct the jury as to the elements that constitute the respective degrees or for him or the appellate court to say whether a verdict of guilty in one degree or the other is contrary to the law or the evidence since there is nothing in the statute to distinguish between the elements which constitute the degrees. There is nothing to distinguish between the elements which constitute the degrees because there is no distinction between those elements. There is one offense of two degrees with reference to the meriting of a higher or lower penalty. It would be equally impossible for the trial judge to instruct the jury as to the elements that must be found in one case or the other or for him or the appellate court to say whether a verdict of guilty in one case or the other is contrary to the law or the evidence, in any case where the law permits the jury to say whether the penalty shall be more or less severe without indicating under what circumstances it may find one way or the other. In such cases the court may instruct the jury as to the penalty and then leave it to the latter to say on all

the evidence whether the accused, if convicted, is deserving of the higher or lower penalty. When, as is more commonly the case, the court itself is authorized to fix the penalty, there is, as a rule, nothing specified in the statute to guide him either as to the amount or nature of the penalty within the prescribed limits.

These provisions of the statute have been on the books fifty years (Penal Code, 1850, Ch. 33, Secs. 6-8; Penal Code, 1869, Ch. 32, Secs. 6-8). The same is true of similar provisions in regard to common nuisances (Penal Code, 1850, Ch. 37, Secs. 8-10; Penal Code, 1869, Ch. 36, Secs. 8-10; Penal Laws, 1897, Ch. 36, Secs. 331-333). Similar provisions relating to manslaughter, which is divided into three degrees, have been on the books forty years (Act of June 30, 1860; Penal Code, 1869, Ch. 7, Secs. 6-9; Penal Laws, 1897, Ch. 7, Secs. 45-48). The validity of these provisions have never been questioned until questioned by counsel for the present defendant. If they had been considered as delegating to the court or jury power to define offenses, their validity undoubtedly would have been questioned. The question is one of construction. If the degrees mean different offenses, the statute is clearly unconstitutional and defective; if the degrees mean different grades with reference to the meriting of a greater or less penalty, the statute is clearly constitutional and complete. The latter construction has been acquiesced in by all branches of the government as well by the bar for half a century. It is the construction placed upon the statute by the Supreme Court with reference to this very defendant on *habeas corpus* (*In re Marshall, supra*), and being only a question of construction, and the construction long acquiesced in and finally decided being at least a possible construction, in our opinion, it should not be disturbed.

It is further contended that the verdict of the jury cannot stand because not unanimous. The verdict was returned May 18, 1900, during the transition period between the annexation of these islands to the United States and the taking effect of the Act of Congress establishing a Territorial government for these islands. We hold that verdicts by nine or more out of twelve jurors, as permitted by Hawaiian law before such annexation,

could be lawfully returned after annexation and before the establishment of such government, basing our conclusion upon the reasoning in *Peacock & Co. v. Republic*, 12 Haw. 27; *Republic v. Edwards, Ib.* 55; and the dissenting opinion in *Ex parte Edwards*, p. 33 *ante*.

A third point will be considered which, though not touched upon at the argument, is raised by the exceptions and noticed in defendant's brief. It is replied to by the prosecution in a supplementary brief. The defendant was charged in the District Court with both the making and the publishing of a libel. Upon his arraignment there he pleaded not guilty, as shown by the record. In the Circuit Court on appeal the charge was amended so as to cover the making of a libel and not the publishing. It does not appear by the record whether the defendant pleaded to the charge as amended or not. It is contended that it should so appear.

The general rule is that there must be in every criminal case an arraignment and a plea, the object of the arraignment being to identify the accused, inform him of the charge and obtain his plea, the object of the plea being to make an issue to be tried. It is generally held that where the record shows a plea, an arraignment will be presumed, but that the record must show at least a plea. This however is regarded as mere matter of form within the meaning of statutes which provide that criminal proceedings shall not be affected by reason of defects in matters of form not prejudicial to the defendant. *United States v. Molloy*, 31 Fed. Rep. 19. In that case the record failed to show an arraignment or plea. The Circuit Court, per Brewer, J., aside from the question of the effect of the statute, said:

"In the first place, it is well to consider what the purpose and necessity of an arraignment is. It is laid down in the old law books that three objects are to be subserved: (1) The identification of the defendant; (2) giving him information of the particular offense charged against him for which he is to be tried; and (3) to receive from him the plea which he makes to that charge. Now in the case, as tried, it is perfectly evident that the defendant knew exactly the offense charged against him; that he was identified; and that he denied the charge and went to trial upon

that denial. Indeed, he went on the witness stand himself, and there denied it. It may seem something of an anomaly to say that proceedings may be such that in the trial court there is no evidence of prejudicial error when the record transferred to an appellate court may disclose such error. And yet, this matter of arraignment presents very much such a case. Where a record taken to the supreme court shows simply an indictment, a trial, and a conviction, there is nothing affirmatively appearing upon the face of the record from which that court can say that the defendant knew, prior to the impaneling of a jury, and prior to the trial, the exact nature of the charge against him. *Non constat* but that he went to trial supposing that the charge was one thing, and, after the testimony was introduced, discovered for the first time that he was being tried for another and different offense. And so, pursuing that thought, that court might say that the record disclosed error, because it failed to show, as one of the guarantees of his protection, that he knew, prior to the time his case was presented to the jury, the exact offense charged against him. But the trial court may have had, as my Brother Thayer had in this trial, the most abundant evidence that the defendant knew exactly the offense which was charged against him, and was prepared to go to trial upon it; and if he did, all that the arraignment subserves was accomplished; and to say that he should be entitled to a new trial for that omission would seem to be, as Chief Justice Henry well says, 'like trifling with justice.' "

In the present case, the defendant, besides pleading not guilty in the District Court, appeared on his appeal in the Circuit Court and moved for a continuance for the purpose of obtaining testimony from abroad, which motion was granted; afterwards he filed a stipulation admitting certain facts; he demurred to the charge; the charge was read at the opening of the trial; the defendant took the stand himself as a witness. It may be said as was said in the case just cited: "In the case, as tried, it is perfectly evident that the defendant knew exactly the offense charged against him; that he was identified; and that he denied the charge and went to trial upon that denial." Whether the defendant in fact formally pleaded to the charge as amended we do not know. The following entry on the minutes, affords some ground for supposing that he did, but that the clerk made an error in his entry: "Mr. De Bolt reads the demurrer; after

which, by consent of counsel herein, *the applies to the charge as amended* at the November Term, 1899. Demurrer submitted without argument. The court overrules the demurrer. Mr. De Bolt notes an exception. Trial of the above entitled cause to be set after Monday, the 14th instant."

Whether under our statute (See Civ. L. Sec. 1109) the rule of the common law should be followed in the absence of a curative statute, or whether our curative statutes (See Civ. L. Secs. 661, 680, 681) are sufficiently broad to cover this case, we need not decide.

It is settled that on an appeal from a lower court where a plea of not guilty is entered, it is unnecessary for the defendant to plead again in the upper court. *Rasmussen v. State,* 63 Wis. 1; *Johns v. State,* 104 Ind. 557. It was held also in the last named case that a plea would be presumed where the record was silent on the subject. This seems not to be the general rule, however. It has been decided also that when a plea to an original charge has been entered, whether in the lower or higher court, a further plea to an amended charge is unnecessary; *Rasmussen v. State, supra; State v. Beatty,* 45 Kan. 492; 25 Pac. 899. In the present case it appears of record that the defendant pleaded not guilty to the original charge in the District Court. In the Circuit Court the charge was amended by omitting that portion which related to the making of the libel. The court undoubtedly had the power to allow the amendment. That is not disputed. The statement of the remaining charge was amended to some extent in form, but no point is made of this. In our opinion it was unnecessary to plead to the amended charge.

The exceptions are overruled.

*W. O. Smith* for the prosecution.

*J. T. De Bolt* for the defendant.

### DISSENTING OPINION OF GALBRAITH, J.

The opinion of the majority of the court reiterates the novel doctrine of *"a transition period,"* referring to the period of time between the signing of the Joint Resolution annexing the Ha-

waiian Islands to the United States, July 7th, 1898, and the taking effect of the Organic Act, June 14, 1900, during which time, it is claimed, the islands were neither an independent sovereignty nor a part of the United States, and were somewhat in the condition referred to by Milton in the following lines:—

"So here the archangel paused
Betwixt the world destroy'd and the world restored    *    *    *
Then, with transition sweet, new speech resumes."

—P. L. XII 5.

and maintains the position to support which, it seems, the phrase was coined, to wit, that during this period the Constitution of the United States had no force or effect in the Hawaiian Islands. From this doctrine and position I most respectfully dissent. My reasons for so doing are set out at length in the opinion of the court in *Ex parte Edwards*, page 33 *ante*, and it will be unnecessary to repeat them here. However, as the dissenting opinion in the *Edwards* case is relied on as authority for denying the principal contention of the defendant in this case, I am constrained to state that the authorities relied on, it seems, do not clearly support the contention claimed for them in such dissenting opinion.

The quotation from the speech of Daniel Webster is clearly in point, but it is not a controlling authority, particularly so when it is remembered that the words quoted were uttered in the heat and passion of a political debate in the Senate of the United States. It is possibly a sufficient answer to this authority to state that John C. Calhoun, at the same time and place, maintained the opposite view and supported the same with equal learning and ability, and that seven years later, (1856), the Supreme Court of the United States approved of the views advocated by Mr. Calhoun and disapproved of those supported by Mr. Webster, and quoted in the dissenting opinion in the *Edwards* case. *Scott v. Sandford*, 19 How. 450.

The case of *United States v. Dawson* (15 How. 467) is not an authority against the opinion of the court in the *Edwards* case. The only question presented and decided in that case was one of

jurisdiction—whether a defendant should be tried in the Eastern or Western District of Arkansas for a crime against the United States committed in the Indian country known as the Indian Territory, the court deciding that the "sixth amendment of the constitution, *respecting the place of trial,* applies only to crimes committed in the states." This case was decided at the December term, 1853, and if it can be said to support the contention claimed, it is clearly in conflict with the opinions of the same court expressed at a much later date. *Springville v. Thomas,* 166 U. S. 707, decided April 26th, 1897; *American Pub. Co. v. Fisher,* 166 U. S. 464, decided April 12th, 1897, and *Thompson v. Utah,* 170 U. S. 346, decided April 25th, 1898, squarely hold that the fifth and sixth amendments do apply to the territories of the United States.

The case of *Talton v. Mayes* (163 U. S. 376), on which much stress is laid, is clearly not an authority against but is one in support of the opinion in the *Edwards* case. It is expressly conceded in the *Edwards* case that the first ten amendments of the Constitution do not apply to the states and this *Mayes* case holds that the fifth amendment does not apply to the state governments but that it is operative on "federal powers created by and springing from the Constitution of the United States." It would clearly follow that the limitations contained in said amendment are a restriction on the powers of the Congress of the United States in legislating for any territory subject to its immediate jurisdiction.

All that I contend for in this case and all that was decided in the *Edwards* case, it seems, is expressly admitted by Judge Townsend whose opinion, it is claimed, strongly confirms the views expressed in the dissenting opinion.

"It may be admitted," says Townsend, Judge, "that the constitutional guarantees of civil rights would apply to the territory under the sovereignty but not a part of the United States. Certain civil rights which we believe belong to every one are crystalized into the negative provisions of our Constitution in order to prevent any wrongful and improper use of our power, and these may be held to control our power wherever it reaches. These considerations may be found to limit us in governing any territory." *Goetze v. United States,* 103 Fed. 85.

One of the "civil rights" which Judge Townsend asserts belongs to every one and which is "crystalized into the negative provisions of our Constitution" is the right of every citizen or subject of the United States charged with crime, except impeachment, to demand a trial by jury. It is now settled beyond controversy that the "jury trial" provided for by the Constitution is a jury as constituted at common law, of twelve freeholders, "without just exception, and of the *visne* or neighborhood," and that a unanimous verdict is absolutely essential to a conviction.

*Webster v. Reid*, 11 How. 437-460; *Am. Pub. Co. v. Fisher*, 166 U. S. 464-468; *Springville v. Thomas, Ib.* 707; *Thompson ι Utah*, 170 U. S. 343.

This being true it clearly follows that the defendant, having been convicted by the concurrence of only nine jurors, was denied his constitutional right of a trial by jury and that his conviction was illegal and void. Holding the views I do on this question, it is not necessary to express an opinion on the other questions decided by the court in the opinion.