The State v. Bryant.

## THE STATE v. BRYANT, *Appellant.*

93 273
100 388
93 273
101 349
93 273
106 169
93 273
115 473
117 659
93 273
124 9
93 273
134 ᵘ8
93 273
141 631
93 273
147 531
148 282
149 465
93 273
168 ²126

1. **Criminal Practice :** CONTINUANCE. An application for a continuance must contain the statutory requirements, or it will be rightly overruled.

2. ———— : COMPETENCY OF JUROR : OPINION. One is competent as a juror who, on his *voir dire*, states that he had formed an opinion, from rumor and newspaper accounts, purporting to give the evidence on a former trial, that it would take evidence to remove the opinion, but that, notwithstanding such opinion, he could hear the case impartially and decide it according to the evidence and instructions of the court, and that he could try the case as impartially as if he had never heard of it. (Sherwood, J., dissenting).

3. ———— : ADMISSIONS. The admissions as to the evidence of an absent witness, made by the state, under Revised Statutes, section 1886, to avoid a continuance, had reference only to the trial as to which the continuance was sought, and cannot be used by the defendant at a subsequent term, as evidence in his behalf.

4. ———— : INSANITY : EVIDENCE. Persons not experts, but having had favorable opportunities for ascertaining, by observation, the facts, can testify as to their opinion touching the defendant's insanity.

5. **The evidence** in this case examined, and the action of the court, in ruling on its admission, and in giving and refusing instructions, approved.

*Appeal from Clarke Circuit Court.*—HON. B. E. TURNER, Judge.

AFFIRMED.

The instructions given by the court, and referred to in the opinion, were as follows :

" 1. The jury are instructed that the defendant is charged with murder in the first degree, and that, under the evidence in the case, it is their duty to find him guilty of murder in the first degree or to acquit him."

" 6. As a defence to this prosecution, the defendant, by his counsel, has interposed the plea of insanity ;

The State v. Bryant.

that is, that the act which he is alleged to have committed is one for which he cannot be held criminally responsible, because, at the time of the commission, he was insane."

"7.   The term insanity, as used in the defence, means such a perverted and deranged condition of the mental and moral faculties as renders a person incapable of distinguishing between right and wrong, and makes him unconscious, at times, of the nature of the act he is about to commit."

"8.   If the evidence shows, to the reasonable satisfaction of the jury, that the defendant was so insane, at the time of the killing, then, in such case, he is not, under the law, guilty, and the jury should acquit him on the ground of insanity."

"9.   The law presumes every person to be of sound mind until the contrary is shown, and when insanity is interposed as a defence, the fact of the existence of such insanity, at the time of the commission of the offence, must be established, by the evidence, to the reasonable satisfaction of the jury, and the burden of proving this fact rests on the defendant."

"10.   Although the jury may believe, from the evidence, that defendant did kill Lee, yet, if they further find that, at the time he did so, he was in such an insane condition of mind that he could not distinguish between right and wrong, in reference to such killing, then such killing was not malicious, and the jury should acquit him of the offence charged on the grounds of insanity."

"11.   To establish insanity, positive or direct testimony is not required.   Circumstantial evidence, which reasonably satisfies the minds of the jury that the defendant, at the time the alleged shooting was done, was incapable of distinguishing between right and wrong, or of comprehending the nature of the act, will be sufficient."

"12.   If the jury shall believe, from the evidence,

that defendant, at the time of the killing, was laboring under a fit of temporary insanity, which was then and there the result of the immediate use of intoxicating liquors, then, in such case, there is no mitigation or excuse for such killing. But if the evidence shows that the defendant was insane, the fact that he may have also been drunk, if the jury believe, from the evidence, that he was drunk, will not make him criminally liable. Under the law, drunkenness will not excuse crime or mitigate it."

"13. Although the evidence may show that defendant was weak in mind, and partially insane, still the defendant will be criminally responsible for the killing, if it shall appear, from the evidence, that he knew the right from the wrong, in reference to such killing, at the time of the killing."

"14. There is no evidence that shows such conduct on the part of Lee toward defendant's wife as would excuse, or mitigate, the killing. But, if the jury shall believe, from the evidence, that defendant, at the time of the killing, was so insane, on account of jealousy of Lee, as not to be able to distinguish right from wrong, in reference to the act, then the jury shall acquit."

*N. T. Cherry, G. K. Bates, U. F. Givens* and *McKee & Jayne* for appellant.

(1) The court erred in refusing to grant defendant a continuance.. R. S., secs. 1883, 1884; *McLane v. Harris,* 1 Mo. 700; *Moore v. McCullough,* 6 Mo. 444; *Tunstall v. Hamilton,* 8 Mo. 500; *Mackey v. State,* 12 Mo. 492; *Kelley v. Saunders,* 35 Mo. 200. (2) The court erred in accepting William Wickel, Peter Hancock, Joseph Vandolah, John Shuler, Price Davis, C. J. Duty, Chas. Hull, Wm. Ballard, and Horace Sherwood as qualified jurors, and retaining them, or either of them, on the panel of forty, out of which the jury were selected

to try the cause. *State v. Culler*, 82 Mo. 623. (3) The court erred in excluding from the jury that part of an application for a continuance read as the evidence of John Barbour, an absent witness, at the former trial. R. S., sec. 1886; *Carroll v. Paul*, 19 Mo. 102. (4) The court erred in permitting the witness, Asa S. Mason, as well as the witnesses, Charles Henshaw, Thos. Curts, and Henry Gredell, or either of them, to express or state an opinion, to the jury, as to the sanity or insanity of defendant. *Baldwin v. State*, 12 Mo. 223; *State v. Klinger*, 46 Mo. 224; *Cramer v. Peters*, 63 Mo. 429. (5) The court erred in admitting the evidence of the witness, William Cooey. *State v. Creason*, 38 Mo. 372; *State v. White*, 35 Mo. 500; *Harrison v. Barker*, 14 N. W. Rep. 541; *Simpson v. Armstrong*, 30 N. W. Rep. 941. (6) The court erred in giving instructions for the state and refusing same for defendant.

*B. G. Boone*, Attorney General, and *T. L. Montgomery* for the state.

(1) An affidavit for a continuance that does not show due diligence on the part of the defendant to secure material testimony should be overruled. R. S., sec. 1884; *State v. Miller*, 67 Mo. 607; *State v. Hatfield*, 72 Mo. 518; *State v. Underwood*, 75 Mo. 230. (2) An affidavit for continuance fails to comply with the statute (section 1884) when it does not state that affiant believes that the testimony set forth in the application is true, and that the same facts cannot be proved by any other witnesses whose testimony could be as readily procured. *State v. Underwood*, 76 Mo. 639; *State v. Henson*, 81 Mo. 384; *State v. Lett*, 85 Mo. 52. (3) An application for a continuance is addressed to the sound discretion of the trial court, and unless it appears that this discretion has been exercised oppressively, to defendant's prejudice, this court will not reverse. *State v. Jewell*, 90 Mo. 467; *State v. Wilson*, 85 Mo. 140; *State v. Fox*, 79 Mo. 109; *State*

The State v. Bryant.

v. *Ward*, 74 Mo. 255, and cas. cit. ; *State v. Williams*, 69 Mo. 110. (4) One who has formed an opinion as to the guilt or innocence of the accused, from newspaper reports, is not thereby disqualified from serving as a juror on the trial of the cause. R. S., sec. 1879 ; *State v. Wilson*, 85 Mo. 134 ; *State v. Hopkirk*, 84 Mo. 278 ; *State v. Burgess*, 78 Mo. 234 ; *State v. Walton*, 74 Mo. 270 ; *State v. Greenwade*, 72 Mo. 298 ; *State v. Core*, 71 Mo. 288. (5) Where the defence of insanity is interposed, persons, though not experts, who have had the opportunity of observing the defendant, may be asked their opinion as to his sanity or insanity. Their answers must be confined to their own observation. *State v. Baldwin*, 12 Mo. 223 ; *State v. Klinger*, 46 Mo. 224 ; *Crowe, Adm'r, v. Peters*, 63 Mo. 434 ; *Moore v. Moore*, 67 Mo. 192 ; *Appleby v. Brock*, 76 Mo. 314, and cas. cit. (6) Under these rulings questions asked non-expert witnesses for the state were not improper. (7) The instructions given by the court were correct and complete, covering every phase of the case, and none other were required. The instructions asked by defendant were, therefore, properly refused.

SHERWOOD, J.—Tried on a charge of murder in the first degree, the defendant interposed the plea of insanity, resulting in a hung jury on the first trial, and on the second trial, in a verdict of guilty in manner and form as charged ; judgment and sentence accordingly. Appealing from this judgment, the defendant assigns as error the following : (1) The refusal to grant the defendant a continuance. (2) The accepting of certain persons as jurors, and the retaining of them on the panel of forty, from which the trial jury were selected. (3) The exclusion of certain evidence. (4) The admission of certain evidence. (5) The giving of certain instructions on behalf of the state and the refusal to give certain instructions on behalf of the defendant. Of these assignments of error in their order :

I. The application for a continuance will now be discussed. The homicide occurred February 8, 1886 ; at the ensuing April term, the mistrial occurred, and then the cause went over to the October term next thereafter, when the trial now in question took place, beginning on the eighth of October.

Section 1884 of our statute, in relation to such applications in criminal causes, is as follows :

"A motion to continue a cause, on the part of the defendant, on account of the absence of evidence, must be supported by the oath or affidavit of the defendant, or some reputable person in his behalf, showing the materiality of the evidence expected to be obtained, and that due diligence has been used to obtain it, and where the evidence may be ; and if it is for an absent witness, the affidavit must give his name, and show where he resides or may be, and the probability of procuring his testimony, and within what time, and what facts he believes the witness will prove, and that he believes them to be true, and that he is unable to prove such facts by any other witness whose testimony can be as readily procured, and that the witness is not absent by the connivance, procurement, or consent of the defendant, and what diligence, if any, has been used in the premises by the defendant, and that the application is not made for vexation or delay, merely, but to obtain substantial justice in the trial of the cause."

It will be found, on an examination of the affidavits offered in support of the motion for a continuance, that they do not come up to the statutory standard. (*a*) They do not show "the true materiality of the evidence expected to be obtained," because it is nowhere alleged in the affidavits that the defence of insanity would be interposed, and unless this were intended to be done, the evidence offered would be wholly immaterial. *State v. Pagels*, 92 Mo. 300. (*b*) It is not alleged therein that the affiants believe the testimony desired will be true.

(c) There is no allegation that the witnesses are not absent by the connivance, procurement, or consent of the defendant. (d) It does not appear that subpoenas could not have been issued even on the twentieth of August, 1886, the date of the reception of the postal card, in time to have secured the attendance of witnesses living in Boone and Saline counties. (e) For these reasons the exercise of the proper diligence has not been shown ; and the application was properly overruled, even should the element of judicial discretion in these matters be ignored. *State v. Wilson,* 85 Mo. 134, and cas. cit.

II. The next point for determination is, whether any error occurred in selecting those persons who were to compose the panel of forty, from which the trial jurors were afterwards selected. After the first one of those summoned as jurors had been examined, touching his qualifications, the defendant's counsel gave in evidence the account of the trial and evidence, as given by the witnesses'and published in the *Herald, Gazette,* and another paper, the week following the first trial, these being the papers referred to by the jurors, and these papers containing substantially the same testimony as that adduced at the second trial. Our statute, touching the matter in hand, is contained in section 1897 : "It shall be a good cause of challenge to a juror that he has formed or delivered an opinion on the issue, or any material fact to be tried, but if it appear that such opinion is founded only on rumor and newspaper reports, and not such as to prejudice or bias the mind of the juror, he may be sworn."

By this statute are the rights of this defendant, and the qualifications of those who composed the panel, to be determined. As was observed in *State v. Culler,* 82 Mo. 623 : "The *rule* of the statute, then, is the absolute disqualification of every one offered for a juror, who has formed or delivered an opinion on the issue, etc.; the *exception* is where such opinion is founded only on

a rumor or newspaper reports, and even then the exception has no operative effect if they have been such as to prejudice or bias his mind." As the defendant was entitled to a full panel of qualified jurors, before he was required to make his peremptory challenges (*State v. McCannon*, 51 Mo. 27 ; *State v. Waters*, 62 Mo. 196; *State v. Davis*, 66 Mo. 684), it, therefore, becomes important to learn whether there was a full general panel from which to make selection. Hypothetical opinions entertained or expressed by a juror do not, as a rule, disqualify. 2 Graham & Wat. on New Trials, 437, and cas. cit. The leading case on this subject is that of Burr, indicted for treason. Chief Justice Marshall there said : " Light impressions which may be supposed to yield to the testimony that may be offered, which may leave the mind open to a fair consideration of that testimony, constitute no sufficient· objection to a juror ; but those strong and deep impressions which will close the mind against the testimony that may be offered in opposition to them, which will combat that testimony and resist its force, do constitute a sufficient objection to him." 1 Burr's Trial, 416. The result of many authorities is thus succinctly stated by the text-writers already referred to. " The true doctrine is, that if the juror's conceptions are not fixed and settled, nor warped by prejudice, but are only such as would naturally spring from public rumor, or newspaper report ; and his mind is open to the impressions]it may receive on the trial, so as to be convinced according to the law and the testimony, he is not incompetent." 2 Graham & Wat. on New Trials, 378.

And this doctrine is evidently but the embodiment of our statutory rule. To ascertain the condition of the minds of those who were offered to compose the general panel in the case at bar, it was, therefore, proper to interrogate them, and thus ascertain what, if any, opinions they had formed, and the nature and basis of such

opinions. In the course of that investigation, one of those examined, Peter Hancock, declared on his *voir dire* as follows: "I formed and expressed an opinion on rumor, and from reading the newspaper accounts of the other trial, which I read in the Kahoka *Herald* and *Gazette*, and Keokuk *Gate City;* from what I read, I have an opinion now which it would take evidence to remove, but it is founded solely on these newspaper reports and what rumors I have heard; I have never talked to any witnesses in the case about it; I have no bias or prejudice against the defendant, and I live twenty-five miles from Alexandria; I could give him a fair and impartial trial, and would be governed by the evidence only; I am not kin to Lee or defendant, and don't know them; I was not on the grand jury last April, and have no such opinions as would preclude me from returning a verdict of guilty in a case where the punishment is death if the evidence should warrant it." This was all the evidence touching the competency of said Hancock as a juror. Whereupon, the defendant excepted to said Hancock as a competent juror to try the case, which objection the court overruled and accepted him as a competent juror to try the case, and empaneled him as one of the forty out of which the jury were selected to try the case. To the overruling of the defendant's objection, and the accepting of said Hancock as a competent juror, defendant, at the time, objected and excepted.

Joseph Vandolah, when examined, said: "I have formed, but don't think I ever expressed, any opinion as to the guilt or innocence of the defendant; I read an account of the trial in the *Clark County Gazette*, and may be in the *Herald;* in this account of the trial they gave what purported to be the evidence; on this I formed an opinion and have an opinion still; I live seventeen or eighteen miles from Alexandria; I know I read whatever appeared in the *Gazette;* it claimed to

give the evidence at the trial ; it would take different evidence to remove my opinion ; I believe what I read had been sworn to, but I did not pay attention to it as I would if I had been a juror ; I have a brother living in Kahoka ; don't know that I ever talked to him about it ; have heard the case talked of some around in the stores of Kahoka ; I have never talked to any witness in the case ; the only opinion I have formed is from rumor, and what I read in the paper ; I have no bias or prejudice against the defendant ; don't know him ; I could hear the case, I think, impartially, and decide it according to the evidence and the instructions of the court ; I think I could try the case as impartially as if I had never heard of it ; I am not of kin to Lee or defendant ; was not on the grand jury at last April term, and have no such opinion as would preclude me from returning a verdict in a capital case, if the evidence should prove guilt." This was all the evidence touching his competency to sit as a juror in the case. Whereupon, defendant objected to the said Vandolah, as a competent juror to try the case, which objection the court overruled, and accepted him as a competent juror, and he was empaneled as one of the panel of forty, out of which the defendant and the state were required to make their challenges. To the overruling of the defendant's objections, and to the accepting of him as a competent juror, defendant, at the time, objected and excepted.

The above quotations I have given in the language of those examined in order that there might be no room for misapprehension. The question then arises, were those, answering as aforesaid, competent to place on the general, or on the special, panel ? And this question gives birth to another one, what is meant by the statute, when it says "*newspaper reports*" ? Looking back to the statute as it was originally, it will be found that the phrase just quoted does not occur therein. R. S., 1845, p. 880, sec. 12 ; 2 R. S., 1855, p. 1191, sec.

14; G. S., 1865, p. 849, sec. 13. But the statute was as it is now, minus those words. In 1848, section 12, *supra*, was first passed upon judicially, in *Baldwin's case*, 12 Mo. 223. The circumstances were these: Baldwin was on trial for murder; one offered as a juror, being sworn on his *voir dire*, disclosed in his answers that his opinion had been formed from statements he had seen in the New Orleans newspapers, but that he had no bias or prejudice, etc.; and Judge McBride, in passing upon his competency, after quoting the statute, said: "The information, upon which the juror predicated his opinion, was derived from newspaper statements, which, of all other sources of intelligence, are the most uncertain and unreliable; gleaned, as such matters are, from the streets and alleys, beer-houses and oyster-cellars of a large commercial city, and without any special pains being taken to ascertain the particulars of the affair." And the juror was held competent.

It is manifest from this ruling, that "*rumor*" and "*newspaper reports*" were regarded as legal equivalents, so far as affecting the competency of a juror is concerned. And when the legislature, by the revision of 1879, added the words, "*newspaper reports*", to the existing statute, thus coupling that phrase with the word "*rumor*", it will be intended that they did so as manifesting the design of accepting that phrase with the judicial meaning thereto attached; and by coupling the words mentioned together, in the same sentence, they meant in this instance to give legislative sanction and application to two familiar maxims, "*noscitur a sociis*", and "*copulatio verborum indicat acceptionem in eodem sensu*." *McNichol v. Mercantile Agency*, 74 Mo. 457. If this view is to prevail, the publications in question cannot be treated as "*newspaper reports*", but must needs occupy a higher plane of authenticity, since the newspaper publications referred to were a substantial report of the testimony, as given at the first trial, and

as embodied in the present record. Having eliminated from this discussion all question as to the nature of the publications on which the opinion of the jurors were founded, and having determined that they were not "newspaper reports" in either the judicial or legislative sense of the term, it is in order now to inquire if those who were declared by the court competent as jurors, were indeed competent. In entering on this inquiry, it must be confessed that there is often a real, but more frequently an apparent, conflict of authority to be met with in the adjudicated cases. Often some statutory regulation causes the apparent conflict, and in most states, such regulations are now adopted. Anterior, however, to the adoption of such regulations, it was well settled that the forming and expression of an opinion as to the guilt of an accused, disqualified a juror. As was said by Marcy, J., in *People v. Mather*, 4 Wend. 232 : " The law attaches the disqualification to the fact of forming and expressing an opinion, and does not look beyond to examine the occasion or weigh the evidence on which the opinion is founded." And at that period, as well as now, it was well settled that an opinion, from whatever source formed, if of such character as to require evidence to remove it, was a disqualifying opinion. *Moses v. State*, 10 Humph. 455 ; *Cancemi v. People*, 16 N. Y. 501. In the case at bar, as already seen, not only were the opinions of Hancock and Vandolah of such a fixed character as to require evidence to remove them, but they were formed on a reliable basis, to-wit, the report of the testimony of the former trial as published in the newspapers mentioned, and substantially as contained in the present record.

In treating on disqualifying opinions in these cases, it is said in a recent text-book : " When it is conceded or proved that the juror holds such an opinion as disqualifies him from sitting in the case, the inquiry as to the juror's competency is ended, and the juror must

be rejected. The rule settled by all the authorities is that no inquiry can be tolerated as to whether the firmness of the man may not enable him to give a true verdict upon his oath, notwithstanding an existing opinion of a disqualifying character. As observed by Chief Justice Marshall, upon the trial of Aaron Burr, 'He may declare that, notwithstanding these prejudices, he is determined to listen to the evidence and be governed by it; but the law will not trust him. * * * He will listen with more favor to that testimony which confirms, than to that which would change, his opinion. It is not to be expected that he will weigh evidence or argument as fairly as a man whose judgment is not made up in the case.' In an early Tennessee case the bill of exceptions showed that the jurors, after admitting the existence of disqualifying opinions, were, against the objection of the prisoner, asked the question, 'Do you think, notwithstanding your opinion, you are in a condition to try this cause impartially?' Peck, J., observed upon this record: 'What is the condition of a juror when such a question is propounded? He will feel it as an appeal made to his pride and magnanimity. He will naturally imagine he can. Nay, he will suppose he has already divested himself of his prepossessions, and he will answer in the affirmative. But who that has taken the slightest view of human nature can help seeing that, immediately on hearing a repetition of the same evidence which first raised his prepossessions, they will return upon him ; or, placing himself upon his resolution, he will err on the other side, and reject the evidence, which, but for the appeal to his pride, would have had its due weight.' " Thomps. and Merr. on Juries, sec. 220, and cas. cit.

In Michigan, where legislation followed in the wake of that of New York, the following statute was enacted in 1873 :

"Section 1. That the previous formation or ex-

pression of opinion or impression, not positive in its character, in reference to the circumstances upon which any criminal prosecution is based, or in reference to the guilt or innocence of the prisoner, or a present opinion or impression in reference thereto, such opinion or impression not being positive in its character, or not being based on personal knowledge of the facts in the case, shall not be sufficient ground of challenge, for principal cause, to any person who is otherwise legally qualified to serve as a juror upon the trial of such action : *Provided*, the person proposed as a juror, who may have formed or expressed, or has, such opinion or impression as aforesaid, shall declare on oath, that he verily believes that he can render an impartial verdict according to the evidence submitted to the jury on such trial : *Provided, further*, the court shall be satisfied that the person so proposed as a juror does not entertain such a present opinion as would influence his verdict as a juror."

After this act went into force, the case of *Stephens v. People*, 38 Mich. 739, was tried, the charge being the keeping of a disreputable house. Six of the persons summoned as jurors, on being challenged, stated on oath that they had formed an opinion from what they had heard, or from reputation, that the house kept by defendant was of the character charged, and some of them stated that their opinions were of that character that it would take evidence to remove them, but the jurors were accepted as competent, and this was assigned as error. In passing on this point, Cooley, J., observed : "The constitution of this state provides that : 'In every criminal prosecution, the accused shall have the right to a speedy and public trial by an impartial jury.' Art. 6, sec. 28. Of course, no legislation can take this right away. In *Holt v. People*, 13 Mich. 224, decided long before the act of 1873 was passed, it was decided by this court that the law did not require that a juror should be entirely unimpressed with any views as to the guilt or

innocence of the person on trial, but only that he should not have an opinion of such a fixed and definite character as to leave a bias on his mind which would preclude his giving due weight to the presumption of innocence. In that decision we followed what we believed to be the settled law of the country, citing in support of it, among others, the opinion of Chief Justice Marshall, in *Burr's case*. It was believed that the decisions in New York, which have led to the legislation on the subject in that state, followed in that now under consideration, were departures from the common-law rule, and that they required a state of mind in jurors which often, and especially in case of crimes likely to attract much public attention, is unattainable among an intelligent and reading people. And we may add to the authorities then cited, as supporting the same views, *Scranton v. Stewart*, 52 Ind. 68; *Curley v. Commonwealth*, 84 Pa. St. 151; *Robinson v. Randall*, 82 Ill. 521. The rule laid down in that case was one sufficiently liberal to protect the public, and at the same time it is not unjust to the accused. It is more reasonable to suppose that the act of 1873 was intended to be in affirmance of this rule, and to put it beyond being modified and overruled, than that it was meant to take from the accused the most important security of fair trial. The question on this record is, whether that jury can be an impartial one whose members are already so impressed with the guilt of the accused that evidence would be required to overcome such impressions. It seems to us that this question needs only to be stated; it calls for no discussion. This woman, instead of entering upon her trial supported by a presumption of innocence, was, in the minds of the jury, when they were impaneled, condemned already; and by their own statements, under oath, it is manifest that this condemnation would stand against her until removed by evidence. Under such circumstances it is idle to inquire of jurors whether or not

they can return just and impartial verdicts; the more clear and positive were their previous impressions of guilt, the more certain may they be that they can act impartially in condemning the guilty party. They go into the jury-box in a state of mind that is well calculated to give a color of guilt to all the evidence; and if the accused escapes conviction, it will not be because the evidence has established guilt beyond a reasonable doubt, but because an accused party, condemned in advance, and called upon to exculpate himself before a prejudiced tribunal, has succeeded in doing so."

The statute just copied, was a transcript of that of New York. This statute, enacted in 1872, was held constitutional in *Stokes v. People*, 53 N. Y. 164. Yet, notwithstanding the broad provisions of this statute, it was held in a later case that the jurors were incompetent who had read, in a newspaper, the evidence for the prosecution on a former trial of the prisoner, and from that had formed an opinion which it would require evidence to remove, although the jurors had fully answered all the questions required by the act in question, and had been received as competent jurors; the court remarking, "it is more than highly probable, it is as certain as any such human event not yet transpired, that the same testimony will be produced again. It has already been considered by the juror, and has satisfied his reason and produced belief, and can scarcely fail of doing so again. Each of the jurors, in the case before us, formed his impression from reading a report of the testimony given for the people. Entering the jury-box with that impression upon his mind, and having the same testimony again produced to him, before any in opposition is presented, that impression is too certainly to be deepened and fixed to be removed without difficulty. We are of the mind that one who has formed an opinion or impression from the reading or report, partial or complete, of the criminatory testimony, against a prisoner, on a

former trial, however strong his belief and purpose that he will decide the case on the evidence to be adduced before him as a juror and will give an impartial verdict thereon, unbiased and uninfluenced by that impression, cannot be readily received as a juror indifferent towards the prisoner and wholly uncommitted. We have already given the views of judges upon this matter. How can it be determined or assumed that the mind, which has already yielded to the force of facts presented to it through the medium of sworn witnesses, and has formed an opinion thereon, will, on a second hearing of the same facts through a like medium, come to a different conclusion, or even so far command itself as to calmly and judicially weigh them again in the balance of a fresh and unbiased judgment? Can that mind be unbiased in the second pondering, of the same testimony, which has already caused it to preponderate and settle, to or towards a conclusion? We think not. Therefore, we are of the opinion that the challenge to the juror should have been sustained." *Greenfield v. People*, 74 N. Y. 277.

In a still later case, that of *Balbo v. People*, 80 N. Y. 484, *Greenfield's case, supra,* was attempted to be distinguished, but the distinction is, by no means, satisfactory; for, in Balbo's case, the juror had read and formed his opinion from a newspaper report of the testimony, taken at the coroner's inquest. The opinion was clearly marked and positive, and would require strong evidence to remove, and yet the juror was held competent. In the latter case, it was held that it was *harmonious* and *consistent* with the former one. But in *Balbo's case, supra,* the ruling was based *exclusively* upon the statute, the court remarking: "The act of 1872 was a clear departure from the law governing challenges for cause, as it had been previously declared by the courts. It abrogates the rule, that the formation, or ex-

pression, by a proposed juror, of an opinion of the guilt
or innocence of the accused, is, *per se*, a disqualification,
and sufficient, in law, to sustain a challenge for princi-
pal cause.   *   *   *   The language of Lord Coke, often
quoted, 'that the juror must stand indifferent as he
stands unsworn,' expresses a rule of justice as well as a
rule of law.   But the act of 1872 assumes that a man
may be a fair and impartial juror, although he has an
opinion of the guilt or innocence of the accused, and that
it is possible that he may, notwithstanding, be able to
set aside and disregard such opinion, and weigh the evi-
dence, and determine the question of guilt or innocence
independently thereof, and uninfluenced thereby.   *It is
not for the court to pass upon the correctness of this
assumption.*"

It is quite impossible to reconcile the decisions in 80
N. Y. and 38 Mich. *supra*, though made under identical
statutes.   If the statutes of a state are to control in such
matters, then *our own* statute, and not that of New
York, and judicial decisions based thereon, should be
our guide.   In any event, however, *Greenfield's case*,
*supra*, in despite of the statute, and *Stephens' case*,
*supra*, on general principles, are authority for holding
the jurors, in the case at bar, incompetent.   In Pennsyl-
vania, which has no statutory regulation on the subject
being discussed, this case arose: Staup was tried for
murder.   Pending the impaneling of a jury, a proposed
juror was put upon his *voir dire*, and, answering, said :
"Have formed and expressed an opinion as to the guilt
or innocence of the prisoner ; read evidence of former
trial ; still entertain that opinion, which it would take
some evidence to remove ; this opinion would not bias or
influence me in my judgment, if I were sworn as a juror ;
this opinion was formed from reading evidence of former
trial."   He further said : "If sworn as a juror, I could,
and would, make up my verdict exclusively upon the
evidence given here, uninfluenced and unbiased by my

present opinion." Challenged for cause, challenge over-ruled, and juror sworn. When the case reached the Supreme Court, Agnew, J., in delivering the opinion of the court, said : " Whenever, therefore, the opinion of the juror has been formed upon the evidence given in the trial at a former time, or has been so deliberately entertained that it has become a fixed belief of the pris-oner's guilt, it would be wrong to receive him. In such a case, the bias must be too strong to be easily shaken off, and the prisoner ought not to be subjected to the chance of conviction it necessarily begets. * * * These principles would have excluded all those jurors who had formed opinions, still resting on their minds, from hearing or reading the testimony given on the former trial." And the judgment was reversed. *Staup v. Commonwealth,* 74 Pa. St. 458.

In the subsequent case of *Ortwein v. Commonwealth,* 76 Pa. St. 414, the same learned judge, then Chief Justice, delivered the opinion of the court, in which he adhered to his ruling in *Staup's case, supra,* making a distinction between that case and the one he was then consider-ing, on the grounds that the opinions of the proposed jurors, though of such nature as to require evidence to remove them, yet not being "formed upon the same evi-dence, substantially, as would be given at the trial," but being founded, in part, on rumor, and, in part, on testimony as taken before the coroner, as read in the newspapers, that such opinions were not of such a fixed nature, nor had such a solid basis on which to rest, as in the former case, especially since a change in the law per-mitting inquests to be held by a justice of the peace, in lieu of the coroner, with all the looseness incident to such investigations, so conducted. The opinion in *O'Mara's case,* 75 Pa. St. 424, was also delivered by Agnew, C. J., in which he approvingly referred to the ruling in *Staup's case, supra,* but distinguished the case being decided from the former one on the ground

that the opinion was not a positive one, and was only formed on newspaper accounts, and from hearing the matter talked about. Chief Justice Agnew also delivered the opinion in *Curley's case*, 84 Pa. St. 151, in which he again alluded, with approval, to *Staup's case*, but called attention to the fact that the opinion of Yahn, offered as a juror, was not fixed, and it did not appear *on what* his opinion was founded.

The case of *Thomas v. State*, 36 Tex. 315, was one where the opinion of one offered as a juror was of such a nature as would require evidence to remove, but being formed altogether on *hearsay*, he was held competent, because the *rule* of the *statute*, in such cases, having been complied with, nothing further could be demanded. In *Black v. State*, 42 Tex. 377, the statute of that state, in relation to certain specified grounds of challenge for cause, passed under review.

The statute is as follows: "It shall be a cause for challenge * * * if, from hearsay, or otherwise, there is established in the mind of the juror such a conclusion, as to the guilt or innocence of the defendant, as will influence him in his action in finding the verdict. For the purpose of ascertaining whether the last cause of the challenge exists, the juror shall be first asked whether, in his opinion, the conclusion so established will influence his verdict. If he shall answer in the affirmative, he shall be discharged. If he shall answer in the negative, he shall be further examined by the court, or under its directions, as to how his conclusion was formed, and the extent to which it will affect his action; and if the court is not satisfied, from such examination, that he is impartial, the juror shall be discharged." And the statute further provides that "the court is the judge, after proper examination, of the qualification of the juror."

Walker and Black were jointly indicted for murder. McIllhenney, being offered as a juror, and

having answered the above question in the negative, and, being further examined, he said "that he had read the report of the evidence in the case of the *State v. A. J. Walker;* that he had formed an opinion there as to the guilt or innocence of the accused; that it would require other and different evidence to change that opinion; that the opinion so formed would not influence his verdict in the slightest degree, and that he would go into the jury-box and give the accused a fair and impartial trial, according to the law and the evidence appearing on this trial." Thereupon, a challenge for cause was made and overruled, and McIllhenney was placed in the jury-box.

In passing upon the question of the juror's competency, Roberts, C. J., said: "The report referred to may be presumed to be the detail of the evidence at a former trial, as given in the newspapers of the city, which is usually published in cases exciting any general interest. He must have placed reliance in the report of the evidence which he read, in order to have enabled him to have formed a conclusion at all, and the fact that, as he says himself, that it would require other and different evidence to change that opinion shows, or at least renders it probable, that it was with some considerable attention to, and consideration of, the facts reported, that he had formed his conclusion. Under such circumstances, we are of opinion that the court below, in judging of the qualification of the juror, should not have been satisfied that he was an impartial juror. The juror took his seat in the jury-box, with a conclusion formed, when the defendant had not been heard, and without the benefit of the instructions of the court, as to the law applicable to the case. If his conclusion was in favor of the prisoner's guilt, it was as a weight put in the scale of justice before the trial commenced. Whatever of obstinacy of character and pride of opinion he possessed had to be overcome by other evidence. There

are, perhaps, but few men who do not lean in favor of a preconceived opinion, founded on what they deem to be an authentic source. They look favorably upon whatever will support it, and examine with increased caution whatever will oppose it. The love of consistency in the formation of their judgments requires this of them."

Section 4771, of the Iowa code (Revision of 1860) allows a challenge, for implied bias, where the juror has "formed an *unqualified* opinion or belief, that the prisoner is guilty, or not guilty, of the offence charged." And, by section 4775, "in all challenges, the court shall determine the law and the fact," etc. In *State v. Lawrence*, 38 Iowa, 51, the proposed juror had heard of the killing and read a newspaper account of it, and though he said it would take some evidence or explanation to remove his opinion, yet the opinion, not being regarded as an "*unqualified* opinion or belief," under the terms of the code, he was held competent, Day, J., saying: "The law does not require that a juror shall be without opinion respecting a case." The ruling in that case is bottomed wholly on the statute. The ruling made in *People v. Welsh*, 49 Cal. 174, was based exclusively on code provisions, with which the defendant, in making his challenges, had failed to comply. Of the two jurors mentioned in the case of *O'Connor v. State*, 9 Fla. 215, one of them had formed and expressed no opinion, and the opinion of the other was only based on *rumor*. In *Ogle's case*, 33 Miss. 383, the juror who had neither formed nor expressed an opinion, but had only an "*impression*" on his mind, formed from rumor, in relation to the homicide, which might require evidence to remove, was held competent. The case of *Carson v. State*, 50 Ala. 134, was ruled entirely upon the statute, under the terms of which the existence or non-existence of the cause of challenge "is shown alone by the evidence of the juror." In *Wilson v. People*, 94 Ill. 299,

the competency of the juror was settled by the statute of 1874, as follows : "*Provided, further*, that it shall not be a cause of challenge that a juror has read in the newspapers an account of the commission of the crime with which the prisoner is charged, if such juror shall state, on oath, that he believes that he can render an impartial verdict, according to the law and the evidence. And, *provided, further*, that in the trial of any criminal cause, the fact that a person called as a juror has formed an opinion or impression, based upon rumor, or upon newspaper statements (about the truth of which he has expressed no opinion) shall not disqualify him to serve as a juror in such case, if he shall, upon oath, state that he believes he can fairly and impartially render a verdict therein, in accordance with the law and the evidence, and the court shall be satisfied of the truth of such statement."

And the statements of the juror fully met the statutory requirements. The case of *Guetig v. State*, 66 Ind. 94, was based upon the code practice, and the rule of *stare decisis*. But it is the only case I have found, whether with or without code, where a juror who had formed an opinion from reading, in a newspaper, the testimony of witnesses, as given at a former trial, which opinion it would require some evidence to remove, was held competent. In *Reynolds v. United States*, 98 U. S. 145, the opinion of the juror was evidently not a fixed one, because, in the opinion of the court, it is expressly ruled that, "if a positive and decided opinion had been formed, he would have been incompetent."

I have reviewed these authorities thus at length, not as doubting the incompetency of the jurors mentioned, for touching that I have no doubt, but because this court has not always been a unit on the point in hand, and the features of this case are so pronounced as to call for an authoritative decision on the subject. I do not think that our statute should receive any forced

or strained, but only a reasonable, construction. I do not think that mere evanescent opinions, or more properly, impressions, "not such as to bias or prejudice the minds of the jurors," opinions, or more properly, impressions, having no better bases than rumor, or its congener, newspaper reports, as already defined, should disqualify him. But I do think that our own statute is to be our guide, its limitations our limitations, in passing on questions of this sort. And that, in determining the competency of a juror, we cannot resort to interrogatories and tests perfectly legitimate, perhaps, in localities where totally different statutory regulations prevail; this view, as to our own statute, being the boundary of our authority, obtained in *Culler's case, supra,* and is supported by that of *Frazier v. State,* 23 Ohio St. 551. The Ohio statute provides that it should be a good cause of challenge to any person called as a juror, "that he has formed or expressed an opinion, as to the guilt or innocence of the accused;" but it was further provided, "that if a juror shall state that he has formed or expressed an opinion as to the guilt or innocence of the accused, the court shall, thereupon, proceed to examine, on oath, such juror as to the ground of such opinion; and if it shall appear to have been founded upon reading newspaper statements, communications, comments, or reports, or upon rumor, or hearsay, and not upon conversations with witnesses of the transactions, or reading reports of their testimony, or hearing them testify, and the juror shall say, on oath, that he feels able, notwithstanding such opinion, to render an impartial verdict upon the law and the evidence, the court, if satisfied that said juror is impartial and will render such verdict, may, in its discretion, admit such juror as competent to serve in such case."

In a case that arose under that statute, one called as a juror had formed or expressed an opinion as to the guilt or innocence of the accused, and the opinion was

formed upon reading what purported to be a report of the testimony taken before a coroner's jury, as published in the newspapers, and being challenged for cause, was held competent; but on appeal the judgment was reversed. In passing on the question, Day, J., observed: "This proviso modified the enactment which unconditionally disqualified a person from sitting as a juror in a criminal case, when he is challenged on the ground that he has formed or expressed an opinion as to the guilt or innocence of the accused. But the modification extends only to cases where the opinion '*shall appear to have been formed upon reading newspaper statements, communications, comments, or reports, or upon rumor, or hearsay.*' In such cases, if the juror swears that he feels able to render an impartial verdict, it is left to the discretion of the court to admit him as a competent juror, on being satisfied that he is impartial and will render an impartial verdict in the case. *This is the extent of the authority conferred by the proviso.* The court is not authorized to exercise such discretion, where the opinion of the juror is formed upon '*conversations with witnesses of the transaction, or reading reports of their testimony, or hearing them testify.*' On the contrary, when a juror is challenged on the ground that he has formed his opinion, and it appears that it was formed upon either of these grounds, the idea of a discretionary power in the court, to admit him 'as competent to serve' in the case, is negatived by the proviso."

So, in this case, the opinions of those called as jurors, not having been formed on "rumor and newspaper reports," they did not fall within the terms of the proviso and were not competent. I have thought it unnecessary to go into any discussion of the constitutional rights of the defendant in the premises, for the reason that, being entitled, as already seen, to a full panel of forty qualified men from which to make his peremptory challenges, it was error to deny him such a panel.

Since writing the above, I have read the opinion of this court, in *State v. Rose*, 32 Mo. 346, which fully sustains the positions heretofore taken by the majority of this court, in *State v. Culler*, 82 Mo. 623, and also by myself in the foregoing remarks as to the proper construction to be given to our statute concerning the selection of jurors, the rule which it establishes, and the exceptions which it contains. If those offered as jurors were competent as such, then I can see no reason why jurors would not be equally competent who had heard the testimony given at the trial *viva voce*, provided they should be willing to swear that they had no bias, etc., and could give the prisoner a fair and impartial trial, etc. Whenever the logic of this case is pushed to its extreme, it will result in such jurors being held competent. I confess my entire inability to see any sound distinction between opinions formed, which it would require evidence to remove, whether such opinions were formed upon information received *through the hearing ear or the seeing eye.* My associates do not concur with me in these views on this point, on which Norton, C. J., will express the views of the majority.

III. I pass now to consider whether any error occurred in excluding evidence. At the former trial, under the provisions of section 1886, Revised Statutes, the prosecuting attorney had admitted that Barbour, a non-resident, would, if present, swear as stated in the affidavit for a continuance; and this affidavit was used in the former trial. At the second trial this affidavit was again offered in evidence and was rejected by the court. Was there error in this? In *State v. Berkley*, 92 Mo. 41, this section was held unconstitutional, but while it was in vogue, it was only regarded as a temporary admission, one *pro hac vice*, and not intended to extend beyond the term at which it was made. The language of the section bears out this idea: "*The* trial shall not be postponed," *i. e.*, *that particular trial*, and not all trials that might

occur during the pendency of the cause.  For this reason the principle announced in *Carroll v. Paul*, 19 Mo. 102, does not apply here.

IV.  There was no error in admitting persons, though not experts, having favorable opportunities of ascertaining, by observation, the facts, to testify as to their opinion respecting the sanity of the defendant.  This point is settled in this state by abundant authority.

V.  Was error committed in admitting the testimony of Wm. Cooey?  The plea was insanity, and it was claimed for the defence that this insanity, though in existence, and exhibiting itself more or less for years before the fatal occurrence, was exacerbated by the fact, or belief, that Lee, the deceased, had debauched the defendant's wife.  The defendant married a girl named Jennie Guinn, in May, 1885, and lived with her some five or six weeks, when a separation occurred. She lived, prior to her marriage, in Alexandria, and Wm. Cooey knew her.  Over the defendant's objection he was allowed to testify:  "I know the defendant.  Some time in the winter of 1885, the defendant came to me at Wayland; wanted to rent a room.  It was while there was a washout of the railroad, and there was a good many railroad men at Wayland.  He said he wanted to fetch a woman there and keep her in the room.  He said he could make a good deal of money out of her off the railroad fellows. I asked him who the woman was and he said, ' you know her, it is Jennie Guinn.'  I had known her from a child; she is in Keokuk.  I afterwards heard he married Jennie Guinn.  I did not let him have the room and he did not bring her."  Was this testimony competent?  The point is not free from difficulty.  After some hesitation, I am inclined to regard the testimony admissible.  It is true that evidence of other crimes, or attempt at crime, is not ordinarily admissible.  In this instance, however, the defence had been allowed to introduce testimony showing the mental condition of the defendant, his ex-

clamations and actions, his wild demeanor, brought about, as it was said, as the immediate effect, upon a naturally weak mental and physical organization, of discovering, or believing, that improper relations existed between Lee and his wife, and when objection was made to such testimony, the defendant's counsel said: "I propose to introduce this to show the condition of defendant's mind and the cause of such condition." But, if what Cooey testified to was true, it went very strongly to show that one, who for gain, would deliberately attempt to make commerce of the body of a girl, whom he shortly afterwards married, would not be likely to be very sensitive or easily excited about his wife's being subjected to that which, of his own head, he had proposed to subject her but a few months before. In this view, though not without doubt, I incline to the opinion that the evidence was admissible.

VI. In order to a proper understanding of the instructions given and those refused, it will be proper to give a short account of the testimony. On the morning the homicide occurred, the defendant was seen in Warsaw, Illinois, opposite Alexandria, Missouri, where the homicide took place. He had a new revolver, said he had just bought it, gave ten dollars for it, and he would make three or four fellows in Alexandria bite the dust before the sun went down. In the afternoon of the same day, he went into Bridgman's barber-shop in Alexandria, wanted to be shaved in a hurry; he said *this was the day of the killing;* said he was waiting on Lige Lee (the deceased); that he was going to take him out to the old lady's; that he had been lying on him, and if he did not take it back, he would shoot the d—s—n of a b—h. Said he was a "little full"; had a half-pint bottle of liquor about half emptied in his pocket, and staggered a little as he went out; but before going showed Bridgman a new pistol, which he said he had bought. Shortly after this, on the same day, the defend-

ant also told another witness that he had it in for Lige Lee; that Lee had been telling lies on him, and he was going to make him take it back or "plug" him before night. Later in the day, Bryant went to a warehouse where Lee, the deceased, was helping Amos Payne load hay, and said he wanted Lee to go out with him to his mother-in-law's and settle that difference. Lee agreed to go with him as soon as he finished his work, and Bryant sat around for an hour and a half and waited until he got through, after which Lee and Bryant locked arms and walked away toward Mrs. Guinn's, the mother-in-law's.

They were seen walking along, conversing in a friendly manner, as they neared the house of Mrs. Guinn, where Bryant's wife resided with her mother. They went up to the house. Bryant went, but when Lee got to the door he retraced his steps and sat down on the yard-fence with his back towards the house. He had been sitting there but a few moments when a man's arm was seen to project out beyond the door-facing with a pistol in the hand. The pistol was fired and Lee threw up his arms, and turned partly around as if to see from whence the shot came. Almost immediately another shot was fired from the same source, and Lee fell off the fence, with a shot through the head, dead. Bryant then stepped out of the house and walked down to where the eye witnesses, a Mrs. Shufert and her son, were standing, and coolly said that he had shot Lige Lee, but didn't know whether he had killed him or not, but hoped to God that he had, and that there were several other men he intended to kill. Bryant then asked for a drink of water. It was given to him and he went away. There was much evidence, also, tending to show the defendant to have been insane, consisting of queer actions, frequent and purposeless wanderings, and long-continued absences from home, and inability to tell, on his return, where he had been. It was also shown that in his boy-

hood and early youth, he had fits, and on attaining his majority had twice attempted suicide. It was also testified that his great-grandmother on his mother's side was insane, and died in an insane asylum in North Carolina; that his aunt on his mother's side was insane, and is now in the insane asylum at Fulton, Missouri, and that his grandfather on the same side, now living in Boone county, Missouri, is not right in his mind at times. And there was testimony of those who had known defendant since boyhood, that he was of average capacity, and was sane.

VII. Now, as to the instructions: They will appear with this opinion. I find no fault with those given by the court of its own motion, and they covered the whole range of controversy. There was no error in the first instruction. In the circumstances detailed in evidence, the defendant was either guiltless by reason of insanity, or else guilty of murder in the first degree, and the jury were so instructed in that instruction. The other instructions, in relation to the crime of murder, were such as have frequently received the approval of this court. As to those on the question of insanity they also were such as this court has frequently sanctioned, and recently in *Pagel's case*, 92 Mo. 300. For the error aforesaid, I think the case should be reversed.

My associates concur on all points, except paragraph two, that in relation to the selection of jurors. On this point they consider that no error occurred. This review results in the affirmance of the judgment, and it is so ordered.

### SEPARATE OPINION.

NORTON, C. J.—In empaneling a jury in this case, the trial court refused to sustain defendant's peremptory challenge to Peter Hancock and Joseph Vandolah, each of whom, on the *voir-dire* examination as to their quali-

fications as jurors, stated that he had formed an opinion, from rumor and newspaper accounts, purporting to give the evidence on a former trial; that it would take evidence to remove the opinion, but that, notwithstanding such opinion, they could hear the case impartially and decide it according to the evidence and instructions of the court, and that they could try the case as impartially as if they had never heard of it. The action of the court, in refusing to sustain defendant's peremptory challenge to these jurors, and accepting them on the panel of forty qualified jurors, is assigned for error. The ruling of the trial court upon the question is fully justified by an unbroken line of decisions, from the case of *State v. Baldwin*, 12 Mo. 223, decided in 1848, down to the case of *State v. Brooks*, 92 Mo. 542, decided in 1887. In case of *State v. Davis*, 29 Mo. 397, the question before the court was, whether the trial court erred in refusing to sustain a peremptory challenge to jurors Shackelford, Miller, and others, who stated that their opinion in regard to the issues were so fixed that it would require evidence to remove it; and, in the disposition of this question, it is said by Judge Scott, who delivered the opinion: "The objection to the competency of the jurors cannot be sustained. The jurors were examined on their *voir dire*, and stated that they had formed an opinion, but it was upon rumor, and was not such as to bias or prejudice their minds. This has long been the law in this state, and such jurors have invariably been held competent; and the course of decision will not be varied because complaisant men, in a long course of cross-examination by counsel, may give an answer somewhat favorable to those who may wish to exclude them. Such is the growing aversion to serving on juries that, unless this rule is adhered to, it will be impossible to obtain competent jurors."

In the case of *State v. Rose*, 32 Mo. 346, where two jurors stated that they had formed and expressed opin-

ions as to the guilt or innocence of the defendant; that they had heard a great deal about the matter, and if the evidence turned out as they had heard it was, their minds were made up and fixed, but that they could hear the evidence and try the case impartially; that the opinion was not such as to bias their minds, it was held that no error was committed in refusing to sustain a peremptory challenge to said jurors. In the case of *State v. Core*, 70 Mo. 491, twenty jurors stated that they had formed opinions from rumor which it would take evidence to remove, but that such opinions would not influence them in the trial of the cause, the action of the trial court in accepting them as qualified jurors was approved. In the case of *State v. Brown*, 71 Mo. 454, when defendant was convicted of murder in the first degree, it is held that a juror was competent who stated that he had formed an opinion as to the guilt of defendant from having read the reports of a former trial in the newspapers; that the opinion was such as would require evidence to remove it, but that he could try the case fairly and impartially without regard to the opinion so formed. The case of *State v. Barton*, 71 Mo. 288, also a case in which defendant was convicted of murder in the first degree, is to the same effect, the opinion in each case being delivered by Napton, J.

In the case of *State v. Walton*, 74 Mo. 275, the rule, as settled by the above-cited cases, is stated as follows: "That a juror, who, upon his examination touching his qualifications as such, answers that he had formed an impression or opinion as to the guilt or innocence of the accused, that such opinion has been formed either from rumor or newspaper reports, or from both, which it would require evidence to remove, is not an incompetent juror, provided it further appears to the satisfaction of the court that such opinion will readily yield to the evidence in the case, and that such juror, notwithstanding such opinion, will determine the issue upon the evidence

adduced upon the trial, free from bias or prejudice." In that case we were asked to reconsider the rulings of this court upon which the above rule is based, and after an investigation of the question, as viewed in cases cited in the opinion by the Supreme Court of the United States, and the courts of last resort in Pennsylvania, New York, Indiana, Iowa, Illinois, Florida, California, Mississippi, Alabama, and Texas, the conclusion was reached that the position uniformly taken by this court on the question was sustained by decided weight of authority elsewhere. It is said in the case of *State v. Walton, supra,* that, where a juror has formed an opinion only from rumor and newspaper reports, he is subject to be challenged for cause, unless it further appears that the opinion is not such as to prejudice or bias his mind, and if this does appear he is a competent juror. Whether an opinion, formed from rumor or newspaper reports, is such an opinion as to prejudice or bias the mind of · the juror is a question of fact, to be determined, under our practice, by the trial judge as any other fact. "The finding of the trial court on that issue ought not to be set aside by a reviewing court unless the error is manifest. No less stringent rules should be applied by the reviewing court than those which govern in the consideration of motions for new trials because the verdict is against the evidence. * * * In such cases the manner of the juror while testifying is often more indicative of the real character of the opinion than his words. That is seen below, but cannot always be spread on the record. Care should, therefore, be taken in the reviewing court not to reverse the ruling below upon such a question of fact, except in a clear case."

The same rule is announced in case of *State v. Stein,* 79 Mo. 330, and *State v. Hopkirk,* 84 Mo. 283. In this last case Judge Sherwood, speaking for the court, said: "In relation to admitting certain persons to form the

VOL. 90—20

panel of forty from which the petit jury was chosen, it is enough to say that of that number, those who were objected to at the time the panel was being formed, and exceptions as to their being accepted saved, none of them had formed their opinions except from minor talk in the neighborhood and newspaper reports ; they, therefore, do not come within the rule laid down in *Culler's case*, 82 Mo. 623, and were competent to form the panel from which the jury was afterwards chosen."

The fact cannot be ignored that in the march of civilization there are one or more newspapers in every town and county of the state, and that, as a rule, they are read with avidity by all the citizens who can read, and when a homicide or other crime is committed the enterprising journalist publishes the fact with all the attending circumstances. Such accounts are usually sought after and read with eagerness, and it is just as impossible for the reader not to be impressed by it, and not have some opinion concerning it as it is to throw black ink on a white wall without coloring it. One of these results is produced by a law of the mind and the other by a law of matter. The legislature, giving recognition to this law of the mind, expressly provided that opinions formed from newspaper reports and rumors should not disqualify a person from being a juror, unless it should further appear that such opinion would bias his judgment and prevent him from trying the case impartially, and according to the evidence adduced on the trial. If all such persons and readers of newspapers are to be excluded as incompetent jurors, the result would be that the citizen charged with a crime would, of necessity, either be compelled to have his cause submitted and tried by a jury of the most ignorant class in the community, if the state should exercise its right of peremptory challenge, or to a jury composed of that class of persons who seek to be professional jurors. Believing the rule, so uniformly followed in this state, to be in

accord with sound principle and the weight of authority, and productive of the best results, both for the accused and the state, no reason is perceived for departing from, and we adhere to it in all its integrity.

What is said by Judge Sherwood, in the opinion filed on this branch of the case, does not express the views of the court, but in what I have written Judges Ray, Black, and Brace concur, and Judge Sherwood dissents.    We concur in what is said in the opinion filed as to other questions involved in the case, and the judgment is, therefore, affirmed, with the concurrence of all the judges, except Judge Sherwood.